*379 Justice Souter, with whom Justice Ginsburg
joins, concurring in part.
I am convinced that the Court’s historical analysis is sound, and I join all but Part II-D-2 of the opinion. As the Court demonstrates, the confrontation right as understood at the framing and ratification of the Sixth Amendment was subject to exception on equitable grounds for an absent witness’s prior relevant, testimonial statement, when the defendant brought about the absence with intent to prevent testimony. It was, and is, reasonable to place the risk of untruth in an unconfronted, out-of-court statement on a defendant who meant to preclude the testing that confrontation provides. The importance of that intent in assessing the fairness of placing the risk on the defendant is most obvious when a defendant is prosecuted for the very act that causes the witness’s absence, homicide being the extreme example. If the victim’s prior statement were admissible solely because the defendant kept the witness out of court by committing homicide, admissibility of the victim’s statement to prove guilt would turn on finding the defendant guilty of the homicidal act causing the absence; evidence that the defendant killed would come in because the defendant probably killed. The only thing saving admissibility and liability determinations from question begging would be (in a jury case) the distinct functions of judge and jury: judges would find by a preponderance of evidence that the defendant killed (and so would admit the testimonial statement), while the jury could so find only on proof beyond a reasonable doubt. Equity demands something more than this near circularity before the right to confrontation is forfeited, and more is supplied by showing intent to prevent the witness from testifying. Cf. Davis v. Washington, 547 U. S. 813, 833 (2006).
It is this rationale for the limit on the forfeiture exception rather than a dispositive example from the historical record that persuades me that the Court’s conclusion is the right one in this case. The contrast between the Court’s and Jus *380 TICE Breyer’s careful examinations of the historical record tells me that the early cases on the exception were not calibrated finely enough to answer the narrow question here. The historical record as revealed by the exchange simply does not focus on what should be required for forfeiture when the crime charged occurred in an abusive relationship or was its culminating act; today’s understanding of domestic abuse had no apparent significance at the time of the framing, and there is no early example of the forfeiture rule operating in that circumstance.
Examining the early cases and commentary, however, reveals two things that count in favor of the Court’s understanding of forfeiture when the evidence shows domestic abuse. The first is the substantial indication that the Sixth Amendment was meant to require some degree of intent to thwart the judicial process before thinking it reasonable to hold the confrontation right forfeited; otherwise the right would in practical terms boil down to a measure of reliable hearsay, a view rejected in Crawford v. Washington, 541 U. S. 36 (2004). The second is the absence from the early material of any reason to doubt that the element of intention would normally be satisfied by the intent inferred on the part of the domestic abuser in the classic abusive relationship, which is meant to isolate the victim from outside help, including the aid of law enforcement and the judicial process. If the evidence for admissibility shows a continuing relationship of this sort, it would make no sense to suggest that the oppressing defendant miraculously abandoned the dynamics of abuse the instant before he killed his victim, say, in a fit of anger. The Court’s conclusion in Part II-E thus fits the rationale that equity requires and the historical record supports.